# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL HOME LOAN
MORTGAGE CORPORATION,
8200 Jones Branch Drive
McLean, VA 22102-3110

                Plaintiff,

     v.

DELOITTE & TOUCHE LLP,
30 Rockerfeller Plaza,
New York, NY 10112-0015

          Defendant-Petitioner,

     v.

OFFICE OF INSPECTOR GENERAL,
FEDERAL HOUSING FINANCE AGENCY,
400 7th Street, SW
Washington, DC 20024

            Respondent.

Case No. _____

## DELOITTE & TOUCHE LLP'S MOTION TO COMPEL DOCUMENT PRODUCTION BY THE FHFA OFFICE OF INSPECTOR GENERAL

## TABLE OF CONTENTS

Page

I.     BACKGROUND .................................................................................................1

     A.     The Freddie Mac Action .....................................................................2

     B.     Deloitte's Diligent Efforts To Seek Discovery From FHFA-OIG ..........................3

II.     ARGUMENT.....................................................................................................6

     A.     OIG Should Be Required To Produce All Documents "That Relate In Whole Or In Part To" The Jointly-Identified Priority Reports...............................7

     B.     OIG's Refusal To Provide Responsive Documents Because Other Entities Purportedly Also Have Copies Is Contrary To Law...............................................9

     C.     OIG Asserts Qualified Executive Privileges That Do Not Apply Or Are Overcome By Good Cause ................................................................11

     D.     The Remaining "Good Cause" Factors Militate In Favor Of Disclosure..............18

III.     CONCLUSION...............................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv.*,
  267 F.R.D. 1 (D.D.C. 2010) ...................................................................................11, 12

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980)..............................................................................15

*Dairyland Power Co-op. v. United States*,
  77 Fed. Cl. 330 (2007)...........................................................................................19

*In re Denture Cream Prods. Liab. Litig.*,
  292 F.R.D. 120 (D.D.C. 2013) ................................................................................9

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001)....................................................................................................12

*EPA v. Mink*,
  410 U.S. 73 (1973)..................................................................................................12

*In re Exxon Valdez*,
  142 F.R.D. 380 (D.D.C. 1992) ..............................................................................10

*Fabre v. Martin*,
  623 So. 2d 1182 (Fla 1993) .....................................................................................3

*Farnsworth v. Procter & Gamble Co.*,
  758 F.2d 1545 (11th Cir. 1985) ...............................................................................6

*First E. Corp. v. Mainwaring*,
  21 F.3d 465 (D.C. Cir. 1994)..................................................................................12

*Fisher v. Network Software Assocs.*,
  217 F.R.D. 240 (D.D.C. 2003) ...............................................................................10

*Fla. House of Reps. v. United States Dep't of Commerce*,
  961 F.2d 941 (11th Cir. 1992) ................................................................................13

*Fort Wash. Res., Inc. v. Tannen*,
  153 F.R.D. 78 (E.D. Pa. 1994)................................................................................10

*In re Franklin Nat. Bank Sec. Litig.*,
  478 F. Supp. 577 (E.D.N.Y. 1979) .........................................................................14

*Grossman v. Schwarz*,
  125 F.R.D. 376 (S.D.N.Y. 1989) ............................................................................13

ii

*Haus v. City of New York*,
    No. 03 Civ. 4915, 2005 WL 1705291 (S.D.N.Y. July 21, 2005) ............................................ 14

*Kearney Partners Fund, LLC v. United States*,
    No. 2:10-CV-153, 2013 WL 1966967 (M.D. Fla. May 13, 2013) ..................................... 12, 15

*Kelly v. City of San Jose*,
    114 F.R.D. 653 (N.D. Cal. 1987).............................................................................................. 15

*Lundy v. Interfirst Corp.*,
    105 F.R.D. 499 (D.D.C. 1985) ................................................................................................. 19

*MacNamara v. City of New York*,
    249 F.R.D. 70 (S.D.N.Y. 2008) ............................................................................................... 19

*Miccosukee Tribe of Indians of Fla. v. United States*,
    516 F.3d 1235 (11th Cir. 2008) ............................................................................................... 12

*Microsoft Corp. v. Hertz*,
    No. C04-2219C, 2006 WL 1515602 (W.D. Wash. May 24, 2006).......................................... 10

*Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*,
    376 F.3d 1270 (11th Cir. 2004) ......................................................................................... 14, 17

*Nadler v. DOJ*,
    955 F.2d 1479 (11th Cir. 1992) ............................................................................................... 11

*Northrop Corp. v. McDonnell Douglas Corp.*,
    751 F.2d 395 (D.C. Cir. 1984).................................................................................................. 12

*NXP B.V. v. Blackberry Ltd.*,
    No. 6:12-CV-498, 2013 WL 5913456 (M.D. Fla. Oct. 31, 2013).......................................... 10

*Olympic Refining Co. v. Carter*,
    332 F.2d 260 (9th Cir. 1964) ................................................................................................... 10

*Raffa v. Wachovia Corp.*,
    No. 8:02-CV-1443-T-27, 2003 WL 21517778 (M.D. Fla. May 15, 2003) ............................ 13

*Schreiber v. Soc'y for Sav. Bancorp, Inc.*,
    11 F.3d 217 (D.C. Cir. 1993).................................................................................................... 19

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997).......................................................................................... 12, 15

*In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of
    Governors of Fed. Reserve Sys.*,
    967 F.2d 630, 633 (D.C. Cir. 1992).................................................................................. 12, 13

*Sun-Sentinel Co. v. U.S. Dep't of Homeland Sec.*,
    431 F. Supp. 2d 1258 (S.D. Fla. 2006) ................................................................14

*U&I Corp. v. Advanced Med. Design, Inc.*,
    No. 8:06-CV-2041, 2007 WL 2050979 (M.D. Fla. July 13, 2007) ........................10

*In re Veiga*,
    746 F. Supp. 2d 27 (D.D.C. 2010)........................................................................11

*Wiand v. Wells Fargo Bank, N.A.*,
    981 F. Supp. 2d 1214 (M.D. Fla. 2013)................................................................11

## STATUTES

12 U.S.C. § 4617(b)(2) ................................................................................................18

Fla. Stat. § 768.81 ........................................................................................................3

## RULES

Fed. R. Civ. P. 26(b)(1) ................................................................................................6

Fed. R. Civ. P. 45...................................................................................................9, 22

## REGULATIONS

12 C.F.R. § 1215, *et al.* ................................................................................................4

## OTHER AUTHORITIES

FHFA-OIG, About Us, *available at* https://origin.www.fhfaoig.gov/About ..................2

Defendant Deloitte & Touche LLP ("Deloitte") hereby moves, pursuant to Federal Rule of Civil Procedure 45, for an Order compelling the Office of Inspector General of the Federal Housing Finance Agency ("FHFA-OIG" or "OIG") to comply with the subpoena *duces tecum* served by Deloitte on February 24, 2015 (the "Subpoena") in connection with *Federal Home Loan Mortgage Corporation v. Deloitte & Touche LLP*, No: 1:14-cv-23713-UU (S.D. Fla.) (the "Freddie Mac Action").[1] In support of its motion, Deloitte submits as follows.

## I.   BACKGROUND

This discovery dispute arises from FHFA-OIG's unfounded refusal to produce documents critical to the Freddie Mac Action, a complex civil litigation in which Deloitte faces damages claims of over $1.3 billion. OIG has investigated and studied the lender bankruptcy giving rise to the claims asserted by Plaintiff Federal Home Loan Mortgage Corporation ("Freddie Mac" or "Freddie"), and other issues bearing on Freddie's claimed loss—in each instance criticizing Freddie and its conservator, the Federal Housing Finance Agency ("FHFA"). Yet despite three separate requests, meet-and-confer discussions spanning more than six months, and Deloitte's repeated efforts to work cooperatively with OIG on the scope of its requests, OIG has produced fewer than 90 documents—including numerous duplicates—comprising less than 360 pages. Of those, OIG has redacted the lion's share on the basis of qualified executive privileges. And OIG has withheld 14 documents entirely, on the same grounds. OIG has otherwise refused to provide discovery, contending—with no basis in fact—that the discrete sets of documents Deloitte seeks would be unduly burdensome to produce. OIG's paltry production is without justification, and its arguments unsupported.

This motion seeks an order compelling OIG to produce (1) documents it has withheld

---

[1] Deloitte is filing herewith a Declaration of Stephen P. Barry ("Declaration") and a motion to transfer this motion to the Court handling the Freddie Mac Action—the United States District Court for the Southern District of Florida. Exhibits to the Declaration are designated "Ex. __."

based on qualified privilege claims that either are unsupported or should be set aside for "good cause," and (2) documents in OIG's possession that OIG collected and reviewed in connection with three discrete and highly relevant OIG reports, but that OIG has neither logged nor provided to Deloitte. OIG should be ordered to produce these materials immediately.

## A.    The Freddie Mac Action

In the Freddie Mac Action, Freddie seeks damages for alleged negligent misrepresentations in Deloitte's audit opinions on the consolidated financial statements of Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), Freddie's bankrupt business partner and once the country's largest independent mortgage originator. Though Freddie seeks to lay the blame for its alleged losses on Deloitte, OIG itself—in its capacity as the watchdog of Freddie's conservator—found that Freddie received—and ignored—explicit warnings of fraud at TBW. *See infra* at 3, 16 & n.14. Discovery in the Freddie Mac Action is ongoing, and must be completed by November 3, 2015.[2]

OIG possesses documents essential to Deloitte's defenses. OIG is entrusted to oversee FHFA, Freddie's regulator and conservator.[3] As FHFA's ombudsman, OIG has investigated FHFA's regulatory shortcomings and published numerous reports criticizing its conduct regarding Freddie and TBW. One report reveals, for example, that in June 2008—well before the fraud that allegedly harmed Freddie was uncovered—FHFA itself received a whistleblower

---

[2] Given production delays by Freddie and third parties, including OIG, Deloitte recently moved to extend the discovery schedule in the Freddie Mac Action. The Court agreed, finding "good cause to modify the Scheduling Order to allow additional time for the parties to complete discovery," and extending the schedule by 60 days. Dkt. 81 at 1.

[3] OIG "is established by law to provide independent and objective reporting to the FHFA Director, Congress, and the American people through its audit and investigative activities." FHFA-OIG, About Us, *available at* https://origin.www.fhfaoig.gov/About. "OIG's mission is to promote the economy, efficiency, and effectiveness of FHFA's programs; to prevent and detect fraud, waste, and abuse in FHFA's programs; and to seek sanctions and prosecutions against those who are responsible for such fraud, waste, and abuse." *Id.*

tip that "TBW was fraudulently selling loans to Freddie Mac that TBW had not yet purchased, and that TBW was using the proceeds paid by Freddie Mac to re-pay advances." Ex. A at 11. Yet these "serious allegations of fraud" were "neither pursued to completion" nor "referred to law enforcement authorities for evaluation or possible investigation" because FHFA lacked "standard procedures . . . to assure prompt follow-up." *Id.* OIG's reports and investigative materials are critical to understanding the scope of FHFA's responsibility for Freddie's claimed losses.[4] But OIG refuses to produce—or even review—many of these documents.

OIG has also withheld documents bearing directly on Freddie's risk management failures in its dealings with TBW—another of Deloitte's core defenses. Following its specific and extensive investigation into Freddie's relationship with TBW, OIG concluded that Freddie ignored numerous "red flags" that could and should have alerted it to the fraud. *See* Ex. B at 6-14 (observing that "Freddie Mac was aware of circumstances that raised serious questions about TBW's capitalization, capacity, and compliance with repurchase obligations, [but] effectively waived its applicable guidance and allowed TBW to expand its business volume"). Yet OIG refuses to provide documents bearing squarely on these issues, including a crucially important 2010 "special report" specifically addressing Freddie's risk management practices with respect to TBW during the time period at issue in the Freddie Mac Action.

## B. Deloitte's Diligent Efforts To Seek Discovery From FHFA-OIG

Recognizing the centrality of OIG's materials to its defenses in the Freddie Mac Action, Deloitte for the past six months has diligently used every tool at its disposal to seek discovery from OIG—but to virtually no avail. First, in December 2014 and January 2015, Deloitte issued

---

[4] Deloitte has identified FHFA as a potential *Fabre* defendant in the Freddie Mac Action, based on FHFA's role in Freddie's claimed loss. Under Florida law, to the extent FHFA is at fault for Freddie's purported loss, Deloitte's liability—if any—must be reduced correspondingly. *See* Fla. Stat. § 768.81; *see also Fabre v. Martin*, 623 So. 2d 1182 (Fla 1993).

3

a series of Freedom of Information Act ("FOIA") requests, including—on the advice of OIG's Acting Chief Counsel—five sequential and increasingly narrow requests. *See* Ex. C (OIG acknowledging that Deloitte "submit[ted] requests of comparatively smaller scope, in the hope that some or all of them might qualify for standard—and thus faster—processing, rather than be placed on FHFA-OIG's complex track"). For example, Deloitte lodged a limited request for materials supporting a footnote and a two-page section of a single—and highly relevant—OIG report. But OIG has not satisfied even that exceedingly narrow request. Instead, OIG advised that each of Deloitte's requests was expected to result in the production of over 1000 pages, and would therefore be assigned to the so-called "complex track"—and therefore not timely satisfied. *Id.* To date, OIG has not produced a single document in response to Deloitte's FOIA requests.

On January 12, 2015, Deloitte issued a substantively similar request pursuant to OIG's *Touhy* regulations, 12 C.F.R. § 1215, *et al.*, seeking largely the same corpus of underlying documents. By letter dated February 4, 2015, OIG denied Deloitte's *Touhy* request in its entirety. *See* Ex. C. Finally, on February 24, 2015, Deloitte served the instant Subpoena, again targeting the same materials. *See* Ex. D. OIG lodged broad objections three weeks later, but agreed to provide responsive, non-privileged documents. *See* Ex. E.[5]

Of relevance here, Request 7 of the Subpoena seeks "documents, communications, or other information that relate in whole or in part to" six specified OIG reports, lettered (a) through (f), including materials OIG reviewed or received in connection with the underlying investigations. Ex. D. In an effort to prioritize the distinct requests most critical to Deloitte's

---

[5] OIG is represented here by the Federal Programs Branch of the Civil Division of the U.S. Department of Justice ("DOJ"). At DOJ's request, Deloitte agreed to extend the deadline for responses and objections to the Subpoena by one week, but emphasized its expectation that OIG and DOJ would "devote sufficient resources to resolve promptly Deloitte's pending requests, which ha[d] been submitted to FHFA-OIG in several forms since December 9, 2014." Ex. F.

defenses and least burdensome to OIG, Deloitte asked on March 19, 2015 that OIG provide the

permanent file of underlying materials for only four of those reports. OIG responded by

agreeing to provide supporting documentation relating to three of those reports:

> **Request 7(a)** – *Audit of the Federal Housing Finance Agency's Consumer Complaints Process* (June 21, 2011) (Exhibit A hereto);
>
> **Request 7(c)** – *FHFA's Oversight of the Enterprises' Management of High-Risk Seller/Servicers* (Sept. 18, 2012) (Exhibit M hereto); and
>
> **Request 7(f)** – *Systemic Inspection Report: TBW-Colonial Investigation Lessons Learned* (Aug. 21, 2014) (Exhibit B hereto).

*See* Ex. G. Yet OIG asserted (and continues to maintain) that certain of the requested documents

should instead be obtained from FHFA or Freddie—notwithstanding that OIG unquestionably

possesses them, and that those entities have directed Deloitte back to OIG for these materials.

Ultimately, after three months of this shell game, and despite its representation that *each* of

Deloitte's earlier-issued—and even narrower—related FOIA requests would yield more than

1000 pages, OIG produced between April 28 and May 28 a mere 17 (mostly public) documents

comprising a total of 154 pages, along with three logs describing 28 responsive documents

withheld or redacted on the basis of qualified executive privileges. *See* Ex. H. As to Deloitte's

Request 7(f)—targeting documents relating to OIG's own investigation of the TBW and Colonial

Bank fraud at the core of the Freddie Mac Action—OIG has produced just two documents to

date, and withheld (and logged) only four others. *See id.*

Based on its review of OIG's initial production—and select interview memoranda

therein—Deloitte identified three additional sets of documents clearly relevant to its defenses

and readily accessible to OIG: (1) "[a]ll interview memoranda prepared or otherwise compiled

and/or reviewed in connection with the reports listed in Requests 7(a), 7(c), and 7(f) of Deloitte's

[S]ubpoena," (2) "[t]he contents of the 'OIG Liaison Folder'" referenced in one such

memorandum, and (3) a December 2010 "Report of Special Review" regarding Freddie's TBW risk management failures during 2002 through 2009—the relevant time period in the Freddie Mac Action. Ex. G.

As to Deloitte's first follow-up request, OIG produced on June 22, 2015, 36 additional redacted interview memoranda.[6]  As to Deloitte's remaining requests, however, OIG refuses to collect—let alone produce—the documents requested, on three principal bases.  As to Deloitte's second follow-up request, OIG has acknowledged its "access to a subset of materials from" the "OIG Liaison Folder," consisting of documents numbering only "in the hundreds"—but refuses to provide those materials on grounds that "the folder . . . was created by FHFA and is most likely in their access and control." Ex. G (also asserting that Deloitte's request would be "more appropriately addressed to FHFA itself"). OIG further claims that, although already collected, reviewing the documents at issue "would impose undue burdens on FHFA-OIG." *Id.*  As to Deloitte's third follow-up request, OIG does not deny that it possesses the 2010 Report of Special Review, but refuses production because the report "was authored by FHFA and is most likely in their possession and control." *Id.*  OIG also cites FHFA's invocation of qualified executive privileges in withholding the report. *See id.*; *see also* Ex. H (FHFA-OIG 156-80).

Despite Deloitte's cooperative efforts, OIG continues to withhold critical and readily-accessible documents on grounds that Deloitte's requests are purportedly directed to the wrong entity and/or seek material subject to qualified executive privileges. Deloitte is thus left with no alternative but to seek judicial intervention to resolve these issues.

## II.    ARGUMENT

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); *see* Fed. R. Civ. P.

---

[6] In total, FHFA produced 58 interview memoranda, including 22 duplicates or near-duplicates.

26(b)(1). This motion seeks production of the following highly relevant materials in OIG's possession: (1) materials collected and reviewed during the investigations underlying the OIG reports listed in Requests 7(a), 7(c), and 7(f) of Deloitte's Subpoena, including documents from the "OIG Liaison Folder" and unredacted OIG interview memoranda; (2) FHFA's 2010 *Report of Special Review: Freddie Mac and Taylor, Bean & Whitaker: Risk Management Practices from 2002-2009*; and (3) two other discrete sets of documents withheld based on qualified executive privileges that OIG has not substantiated, and which—on these facts—must yield for "good cause" in any event. There is no dispute that these materials are relevant to Deloitte's defenses. And because OIG does not deny that it previously collected all such materials, production would impose little or no burden. Finally, the exceptional importance of these materials to Deloitte's defenses overcomes any qualified privilege that might be found to attach.

### A.    OIG Should Be Required To Produce All Documents "That Relate In Whole Or In Part To" The Jointly-Identified Priority Reports

FHFA's productions reflect a fundamental failure to produce all of the documents responsive to Deloitte's narrow and indisputably relevant requests. In conferring as to the Subpoena, Deloitte identified three reports that OIG agreed are relevant to the Freddie Mac Action—listed in Requests 7(a), 7(c), and 7(f). These reports, as OIG itself has observed, relate directly to the "fraudulent activities of TBW" at issue in the Freddie Mac Action, Ex. E at 2— and, critically, to Freddie's and FHFA's conduct regarding those activities. OIG initially agreed to provide the materials underlying these three reports, but has fallen short of its promise. Instead, OIG identified and produced just 16 documents cited in the reports, and only upon Deloitte's further request provided certain redacted interview memoranda prepared in corresponding investigations. There remain numerous documents that were collected and reviewed in the course of these investigations that OIG has not yet produced.

7

OIG, by its congressionally-imposed mandate, conducts comprehensive investigations of issues bearing on FHFA and its conservatee, Freddie, and releases public reports reflecting the results thereof. The reports typically follow OIG's collection and assessment of documents from FHFA and Freddie, as well as OIG's interviews of FHFA and Freddie personnel. Yet in response to Deloitte's requests for documents regarding three full reports, OIG has produced or withheld on privilege grounds a mere 429 pages in total, including the interview memoranda that Deloitte targeted in a separate follow-up demand. It is inconceivable that OIG has preserved only 429 pages of material supporting the three detailed reports for which OIG agreed to produce documentary support.

The Court need not take Deloitte at its word. OIG's position on Deloitte's FOIA requests confirms that its productions are woefully incomplete. In that context, Deloitte sought the "workpapers or other documents" supporting specified OIG reports, and emphasized that its request was intended to capture the full "contents of the permanent file of support FHFA-OIG maintains" for the reports. Ex. I. In an effort to avoid the delays attendant to a "complex track" designation, Deloitte—with the advice of OIG's General Counsel's Office and through multiple iterations—tailored its requests as narrowly as possible. For example, Deloitte requested "any workpapers or other documents maintained by FHFA-OIG in support of the section titled 'Freddie Mac Contract Enforcement' on page 8 of the Systemic Implication Report published by FHFA-OIG on August 21, 2014 titled *TBW-Colonial Investigation Lessons Learned*." Ex. J. Separately, Deloitte requested "copies of any workpapers or other documents maintained by FHFA-OIG in support of footnote 1 on page 1 and/or the section titled 'Fannie Mae Termination' on pages 7-8 of" the same report. Ex. K. Yet in response to Deloitte's efforts, OIG deemed each request—though targeting a single section or footnote of a report—likely to require

the production of more than 1000 pages of responsive material, and placed each on the "complex track."[7]  At the same time, in response to Deloitte's Subpoena seeking documents relating to the *entirety* of the same August 2014 report, OIG has produced or logged a mere 62 pages.

OIG's representations as to the scope of materials responsive to Deloitte's FOIA requests, and its meager production in response to Deloitte's Subpoena targeting the same documents, cannot be reconciled—and this gamesmanship cannot be allowed to stand.  OIG should be compelled to produce all documents in its possession relating to—including all documents collected and reviewed in the course of investigations underlying—the three reports in question.  Though not burdensome to produce since the materials are already compiled, that body of material must consist of at least several thousand pages of documents, as OIG itself confirmed with respect to Deloitte's more limited FOIA requests.

**B.      OIG's Refusal To Provide Responsive Documents Because Other Entities Purportedly Also Have Copies Is Contrary To Law**

As to multiple requests, OIG has suggested that Deloitte must exhaust its efforts to obtain documents from other parties and third parties before seeking them from OIG.  For example, in response to Deloitte's request for "[t]he contents of the 'OIG Liaison Folder' referenced during" an August 2011 OIG interview of FHFA officials, OIG confirmed its "access to a subset of materials from the [] folder," but asserted—without quantifying or otherwise describing such documents with particularity—that production would be unduly burdensome because such documents could potentially also be obtained from FHFA.  Ex. G.  OIG has likewise refused to provide the critically relevant Report of Special Review regarding Freddie's TBW risk management practices (one of Deloitte's core defenses in the Freddie Mac Action) during 2002 through 2009 (the time period at issue in the Freddie Mac Action), claiming the report could be

---

[7] Deloitte still has not received a single document in response to any of its FOIA requests.

obtained from FHFA or Freddie. *Id.* And OIG has improperly limited production as to three

OIG reports at issue, citing similar reasons. OIG's position is contrary to law.

Rule 45 obligates OIG to provide all documents responsive to Deloitte's Subpoena that

are not "unduly burdensome" to produce. *See In re Denture Cream Prods. Liab. Litig.*, 292

F.R.D. 120, 123 (D.D.C. 2013) ("Discovery obtained from a nonparty pursuant to Rule 45 has

'the same scope as provided in Rule 26(b).'"). Contrary to OIG's contention, a request is not

unduly burdensome merely because another party also possesses copies of the same documents.

Courts routinely reject the view that a party "first must attempt to compel production from" a

party or "other non-parties" who supposedly "would prove better sources" of discovery before a

third party's compliance is required. *In re Exxon Valdez*, 142 F.R.D. 380, 382 (D.D.C. 1992).[8]

A basic "problem with [OIG's] argument is that it is far from obvious that obtaining

discovery on these issues elsewhere would in fact be more convenient, less burdensome, or less

expensive than obtaining it directly from" OIG. *Exxon Valdez*, 142 F.R.D. at 382. OIG baldly

contends, for example, that Deloitte should be limited to seeking the Report of Special Review—

a single, 25-page document—from FHFA. But OIG itself has access to that report and could

produce it just as easily as FHFA. A court should "entertain[] the burdensome objection only

when the responding party demonstrates how" a specific request "is 'overly broad, burdensome,

---

[8] *See also Olympic Refining Co. v. Carter*, 332 F.2d 260, 266 (9th Cir. 1964) (it is "immaterial," for purposes of enforcing third-party discovery request, that movant "could possibly obtain the same information" elsewhere); *NXP B.V. v. Blackberry Ltd.*, No. 6:12-CV-498, 2013 WL 5913456, at *5 (M.D. Fla. Oct. 31, 2013) (the availability of discovery from another source "does not relieve [a party] of its duty to answer" requests "to the best of its ability based upon its own knowledge, information immediately available to it, and information under its control"); *U&I Corp. v. Advanced Med. Design, Inc.*, No. 8:06-CV-2041, 2007 WL 2050979, at *4 (M.D. Fla. July 13, 2007); *Microsoft Corp. v. Hertz*, No. C04-2219C, 2006 WL 1515602, at *1 (W.D. Wash. May 24, 2006); *Fort Wash. Res., Inc. v. Tannen*, 153 F.R.D. 78, 79 (E.D. Pa. 1994). Furthermore, even if some of the information Deloitte seeks is available elsewhere, there is independent value to confirming what documents FHFA and OIG specifically possess—and, correspondingly, *what* FHFA and Freddie knew, and *when.*

10

or oppressive.'" *Fisher v. Network Software Assocs.*, 217 F.R.D. 240, 246 (D.D.C. 2003). OIG

has not done—and cannot do—so here; the documents at issue have already been collected and,

per OIG, number only "in the hundreds." Further, because these materials are squarely relevant

to Deloitte's core defenses, any slight burden OIG incurs in providing them is not "undue."

At bottom, OIG's obstructionism amounts to a shell game. Both FHFA and OIG have

refused to provide documents in their possession based on assertions that discovery must be had

from the other. *See, e.g.*, Ex. E at 3 (OIG arguing that requests for documents in its possession

relating to FHFA or Freddie would be "more appropriately addressed to the entities

themselves"); Opp'n to Deloitte's Am. Mot. to Compel Doc. Produc. by FHFA, *Federal Home*

*Loan Mortg. Corp. v. Deloitte & Touche LLP v. FHFA*, No. 1:15-mc-22175, Dkt. 24, at 6 (S.D.

Fla. June 16, 2015) (FHFA asserting, with respect to "documents FHFA sent to or received from

FHFA-OIG in connection with the FHFA-OIG reports," that Deloitte "should seek such

documents from FHFA-OIG"). This sort of gamesmanship hampers the kind of fair-minded

discovery conduct mandated by the Federal Rules. This Court should reject OIG's and FHFA's

tactics, and order OIG to produce the responsive documents in its possession at once.

### C.    OIG Asserts Qualified Executive Privileges That Do Not Apply Or Are Overcome By Good Cause

Even where it has identified documents in response to Deloitte's requests, OIG has

withheld highly probative information on the basis of the qualified deliberative process and bank

examination privileges.[9] In order "to properly assert [a] privilege," OIG "must 'establish a

formal, considered, detailed claim of privilege,'" *Ascom Hasler Mailing Sys., Inc. v. U.S. Postal*

*Serv.*, 267 F.R.D. 1, 4 (D.D.C. 2010) (citation omitted), and "bears the burden of demonstrating

[its] applicability . . . with 'reasonable certainty,'" *In re Veiga*, 746 F. Supp. 2d 27, 33 (D.D.C.

---

[9] OIG asserts the bank examination privilege only on behalf of other entities (including FHFA) with a purported interest in certain of the documents. *See* Ex. H.

2010).  "[B]ecause withholding of otherwise discoverable information 'serves to obscure the truth,' a privilege 'should be construed as narrowly as is consistent with its purpose.'"  *Wiand v. Wells Fargo Bank, N.A.*, 981 F. Supp. 2d 1214, 1216 (M.D. Fla. 2013).

The deliberative process privilege "protects the internal decisionmaking processes of the executive branch in order to safeguard the quality of agency decisions."  *Nadler v. DOJ*, 955 F.2d 1479, 1490 (11th Cir. 1992).  It thus shields from disclosure "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  However, the privilege "clearly has finite limits," *EPA v. Mink*, 410 U.S. 73, 87 (1973), and must be "narrowly drawn," *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984).  It applies only if a document is both (1) "pre-decisional, i.e., 'prepared in order to assist an agency decision maker in arriving at his decision,'" and (2) "deliberative, 'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'"  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1263 (11th Cir. 2008) (citation omitted).  And even if related to agency deliberations in the abstract, "purely factual material is not protected."  *Ascom*, 267 F.R.D. at 4; *Mink*, 410 U.S. at 87-88.

Importantly, the qualified deliberative process and bank examination privileges are not absolute, and "may be overridden" for good cause.  *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d at 633-34; *see also Kearney Partners Fund, LLC v. United States*, No. 2:10-CV-153, 2013 WL 1966967, at *5 (M.D. Fla. May 13, 2013).  "[C]ourts must balance the public interests at stake in determining whether the privilege[s] should yield in a particular case, and must specifically consider the need

of the party seeking privileged evidence." *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997). "At minimum," such "ad hoc" balancing requires this Court to consider:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*First E. Corp. v. Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994).

Here, even if OIG could establish that the qualified deliberative process and/or bank examination privileges apply to the documents at issue (something it has not shown),[10] those privileges can—and should—be set aside for good cause. This motion seeks the production of documents within the three categories set forth below.

(1) **Unredacted copies of memoranda reflecting OIG investigative interviews pertaining to critical OIG reports.** In response to Deloitte's requests, OIG has produced 38 memoranda reflecting interviews conducted with FHFA, OIG, and Freddie personnel, in connection with the investigations underlying three salient OIG reports identified by Deloitte. *See* Subpoena Requests 7(a), 7(c), and 7(f).[11] But OIG redacted important information from those documents, including, *inter alia*, the "purpose," "scope," and "conclusion" of each. Ex. H.

First, OIG fails to substantiate its privilege assertions as to the information withheld.

---

[10] OIG's assertion of the bank examination privilege—on behalf of FHFA and other non-financial regulators—is unfounded as a matter of law. "Neither the Eleventh Circuit nor the Supreme Court has explicitly recognized a bank examination privilege." *Raffa v. Wachovia Corp.*, No. 8:02-CV-1443-T-27, 2003 WL 21517778, at *2 (M.D. Fla. May 15, 2003). Even if cognizable, however, the privilege has long been limited to depository banks and their financial regulators—which Freddie, on the one hand, and FHFA (and OIG), on the other, are not. *See In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 633 (D.C. Cir. 1992) (the privilege protects "the report of a *bank examiner*" (emphasis added)).

[11] Certain memoranda also reflect interviews of Fannie Mae employees. Deloitte has also identified Fannie Mae as a potential *Fabre* defendant in the Freddie Mac Action. These documents, too, are relevant to Deloitte's defenses, and should be produced in full.

13

OIG has not identified any specific "policy" formulation to which these documents directly bear. The deliberative process privilege "is properly applicable only to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials." *Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y. 1989); *see also Fla. House of Reps. v. United States Dep't of Commerce*, 961 F.2d 941, 945 (11th Cir. 1992) (limiting the privilege to documents that "make recommendations or express opinions on *legal or policy matters*"). Nor does it "protect a document which is merely peripheral to actual policy formation." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277-78 (11th Cir. 2004); *see also Sun-Sentinel Co. v. U.S. Dep't of Homeland Sec.*, 431 F. Supp. 2d 1258, 1277-78 (S.D. Fla. 2006); *Haus v. City of New York*, No. 03 Civ. 4915, 2005 WL 1705291, at *3 (S.D.N.Y. July 21, 2005). OIG fails to specify the policy to which the redacted portions of its interview memoranda relate—much less show how they contribute to the "formulation" of that policy. On that basis alone, OIG should be ordered to produce unredacted copies of these documents.

Second, any qualified deliberative process privilege that purportedly attaches to these materials is overcome by Deloitte's distinct need for the information withheld. In deciding whether the government's interest in secrecy should yield, "the interest of the litigants, and ultimately of society, in accurate judicial fact finding" is "[f]oremost." *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. 577, 582-83 (E.D.N.Y. 1979). Thus, "the potential value to the private litigant of the requested production must be carefully weighed." *Id.* OIG's interviews examine in depth the very issues presented in the Freddie Mac Action. Although public reports convey OIG's general admonishments of FHFA and Freddie, a full assessment of OIG's conclusions requires an understanding of the stated purpose, scope, and findings of the interviews on which

14

those conclusions are based.[12] Deloitte should not be denied access to this information. OIG should be compelled to provide an unredacted copy of each interview memorandum it prepared.

(2) **Report of Special Review: Freddie Mac and Taylor, Bean & Whitaker: Risk Management Practices from 2002-2009 (FHFA-OIG 156-80).** OIG's refusal to produce the "Report of Special Review" is likewise unfounded. *See* Ex. H (FHFA-OIG 156-80). In 2010, following discovery of the TBW fraud, FHFA specifically investigated Freddie's risk management failures in its relationship with TBW. The investigation focused on the exact time period at issue in the Freddie Mac Action, and FHFA ultimately issued a 25-page report of its findings. Because FHFA's investigation explored issues vitally relevant to the allegations in the Freddie Mac Action, Deloitte has aggressively pursued production of this report—including from OIG, Freddie, and FHFA. OIG is withholding the document based on the qualified deliberative process and bank examination privileges.[13]

As an initial matter, OIG cannot demonstrate that this *final* investigative report is *pre-decisional*. Both the deliberative process and bank examination privileges attach only to documents "that precede an agency's final determination or outcome." *Kearney Partners*, 2013 WL 1966967, at *2. Even then, a document loses protection if it eventually is "adopted, formally, or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "The deliberative process privilege does not shield documents that simply state or

---

[12] Conversely, to the extent OIG might contend that the analyses and findings set forth in the interview memoranda have been disclosed in public reports, OIG cannot possibly claim a continuing interest in secrecy.

[13] Deloitte has separately moved to compel FHFA's production of the Report of Special Review. Following transfer by the U.S. District Court for the District of Columbia, Deloitte's motion to compel against FHFA is pending in the U.S. District Court for the Southern District of Florida, *Federal Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, No. 1:15-mc-22175 (S.D. Fla.).

explain a decision the government has already made." *In re Sealed Case*, 121 F.3d 729, 737

(D.C. Cir. 1997).   As courts have warned, "an overly lax construction of the term

'predecisional,'" like the one OIG asserts, would "submerge[] the rule of disclosure under

exemption." *Kearney Partners*, 2013 WL 1966967, at *2; *see also Kelly v. City of San Jose*, 114

F.R.D. 653, 659 (N.D. Cal. 1987).  Because the 2010 Report of Special Review, even if tied to

agency policy, conveys the final results of FHFA's investigation and was presented to Freddie

and OIG as such, it is not pre-decisional and falls beyond the scope of any executive privilege.

Further, and in any event, this report's exceptional relevance to Deloitte's defenses

justifies its production. Freddie's decision to expand its business with TBW despite known risks

is core to the reliance and causation elements of its claim, as well as Deloitte's affirmative

defense concerning Freddie's proportionate fault for its claimed loss. Ex. L. On that score, OIG

reached the heart of all three issues when it publicly reported that "Freddie Mac was aware of

circumstances that raised serious questions about TBW's capitalization, capacity, and

compliance with repurchase obligations, [but] effectively waived its applicable guidance and

allowed TBW to expand its business volume." Ex. B at 6-14.[14]  A full understanding of FHFA's

and OIG's findings is necessary and appropriate.  Indeed, it is difficult to imagine a document

---

[14] Other OIG reports are to the same effect.  As described in a September 2012 report, Freddie
ignored numerous "red flags" that alerted it to the risks of buying mortgages from TBW:

> Freddie Mac's interaction with ... [TBW] illustrates the risks associated with the
> failure of a high-risk or high-volume counterparty.  FHFA's review of Freddie
> Mac's business with TBW found that TBW was undercapitalized,
> underperforming, and carried too much debt. The Enterprise placed the
> counterparty on its high-risk watch list in December 2007.   Nonetheless ...
> Freddie Mac increased its volume of business with TBW from over $43 billion to
> approximately $52 billion at the end of 2008 and its corresponding risk exposure
> increased from almost $64 million to about $244 million at the end of 2008.  In
> August 2009, when the [FBI] executed a search warrant at TBW's headquarters as
> part of a criminal fraud investigation, total business volume stood at
> approximately $49 billion and total exposure was around $702 million.

Ex. M at 12.

more directly relevant to Deloitte's defenses. Good cause readily supports its production.

(3) **Other Relevant Documents Underlying Key OIG Reports.** OIG's four logs

describe, in barebones terms, several other highly relevant documents that are being withheld

pursuant to the qualified deliberative process privilege. Deloitte seeks the following materials:[15]

- With respect to OIG's June 21, 2011 report, titled *Audit of the Federal Housing Finance Agency's Consumer Complaints Process*: FHFA-OIG 23 through 30, a March 14, 2011 e-mail and attachment sent between OIG "audit staff members" with the subject or title "Freddie Mac/TBW Allegation," and "concerning FHFA-OIG's analysis of factual information and the conclusions drawn therefrom." Ex. H.

- With respect to OIG's September 18, 2012 report, titled *FHFA's Oversight of the Enterprises' Management of High-Risk Seller/Servicers*: FHFA-OIG 181 through 187, an undated report "created" by OIG's "audit staff summarizing their review of Freddie Mac's yearly volume of transactions with TBW, and two attachments thereto regarding Freddie's "response to [an] OIG request related to TBW exposure." *Id.*

First, even based on the scant information provided, it is apparent that these documents

fall beyond the narrow bounds of privilege. OIG provides no indication whatsoever how these

documents relate directly to government policy formulation. At most, they appear "merely

peripheral to" the policy-development process, *Moye*, 376 F.3d at 1277—and must be produced.

Moreover, because the documents are integral to Deloitte's development of its defenses

against Freddie, the qualified privilege must yield, as "good cause" supports their production.

Specifically, the first compilation of materials, as described, provides evidence of FHFA's and

Freddie's actions in light of the TBW whistleblower alert about fraud *at TBW* that FHFA

received in 2008—an alert that was never communicated to Deloitte. Insofar as it demonstrates

[15] As established in Section II.A, *supra*, OIG has produced or logged an exceptionally—and improperly—small fraction of the documents underlying these three reports. Apart from the interview memoranda identified by Deloitte in a targeted follow-up demand (the existence of which Deloitte was unaware prior to OIG's initial production), OIG has provided fewer than 25 supporting documents comprising fewer than 200 pages. To the extent OIG has identified documents as responsive—even under its unduly restrictive rubric—and withheld them in whole or in part, Deloitte contests OIG's privilege assertions as set forth herein. But Deloitte also seeks production of the broader corpus of supporting materials relating to the three reports at issue—which OIG has refused even to review, let alone provide to Deloitte.

FHFA's and Freddie's responsibility for Freddie's alleged loss stemming from that same reported fraud, this tranche of documents is indisputably central to Deloitte's defenses. The second compilation is equally critical. It speaks directly to the damages element of Freddie's claim—that is, Freddie's "TBW exposure"—and the decisions Freddie made to continue doing business with TBW. Deloitte should be permitted to test Freddie's present claim—for more than $1.3 billion in damages, based on TBW's demise—against the representations Freddie made to its regulator in anticipation of that potential outcome.

### D. The Remaining "Good Cause" Factors Militate In Favor Of Disclosure

By itself, the manifest relevance of the evidence at issue justifies its production. The remaining "good cause" factors all support setting aside the privileges that OIG asserts.

**Deloitte cannot obtain equivalent discovery elsewhere.** This motion seeks the production of documents collected and reviewed in connection with OIG's own investigations, and a single FHFA report in OIG's possession. Such critical discovery cannot reasonably be obtained elsewhere. Where FHFA or Freddie has copies of materials, including FHFA's 2010 Report of Special Review, each has asserted sweeping—and unsubstantiated—qualified privileges in withholding such materials from Deloitte.[16] Because Deloitte cannot obtain equivalent discovery from another source, OIG's production is warranted.

**The Government's role in the litigation supports production.** FHFA is conservator to the plaintiff in the Freddie Mac Action. As OIG recently observed, FHFA wields "sweeping" power over Freddie that "position[s] FHFA to potentially control every aspect" of Freddie's actions. Ex. N at 6; *see also* 12 U.S.C. § 4617(b)(2) (directing FHFA's succession to "all rights,

---

[16] Deloitte's motion to compel FHFA's production of certain documents also at issue here is pending. *See supra* note 5. The "buck passing" that necessitated Deloitte's motions against both FHFA and OIG, which both refuse to produce the documents, only confirms that the material at issue is not readily available from any source.

titles, powers, and privileges of" Freddie).  And FHFA has, in fact, assumed an active role in the

Freddie Mac Action—insisting on the inclusion of certain provisions designed expressly to

protect its interests while the parties were negotiating a protective order.  *See* Ex. O, ¶ 25(e).

Charged with overseeing FHFA's conservatorship activities, OIG too has a direct and material

interest in the prosecution of Freddie's claims.  In light of the government's role in the Action,

OIG should be ordered to produce the indisputably relevant documents in its possession.

      **The "seriousness of the litigation" is beyond dispute.**  With more than $1 billion at

stake, the Freddie Mac Action holds substantial implications for both parties.  Further, it touches

both on regulatory conduct by FHFA, and on Freddie's expansion of its business with TBW in

the face of known risks and the onset of the housing crisis.  Against that backdrop, Deloitte's

discovery of critical facts and evidence should not be limited as OIG contends.

      **The protective order eliminates risks from disclosure.**  OIG can point to no

particularized risk that providing the requested information will stifle candid communications

among government employees.  First, OIG has already published numerous *public* reports

sharply criticizing both FHFA's regulation of Freddie and Freddie's risky conduct in relation to

TBW.  More fundamentally, courts have repeatedly recognized that concerns about the impact of

production can be "alleviated" through a "protective order . . . that reconciles the agency's

interest in confidentiality with the [party's] potential need to introduce some or all of the

subpoenaed documents (or information therefrom) into evidence at a public trial." *Schreiber v.

Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 222 (D.C. Cir. 1993).[17]  Thus, while courts may be

more sensitive to the effects of disclosure in the FOIA context, they are appropriately less so "in

---

[17] *See also Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 502 (D.D.C. 1985) ("[T]he protective order issued in the main action . . . is adequate to prevent the sort of public disclosure of information that would undermine confidence in the bank."); *MacNamara v. City of New York*, 249 F.R.D. 70, 84-85 (S.D.N.Y. 2008).

a litigation context, where the rules of discovery allow a court 'to protect a party' . . . through a protective order." *Dairyland Power Co-op. v. United States*, 77 Fed. Cl. 330, 339 (2007).

Here, Deloitte has expressly agreed that "information produced by FHFA-OIG in response to Deloitte's [S]ubpoena is subject to the protective order in the Freddie Mac [A]ction," Ex. G—a protective order that FHFA itself helped draft. Accordingly, any materials provided as a result of this motion would be treated as confidential and subject only to use in the Action. Such protection eliminates any risk that disclosure might otherwise pose.

## III.   CONCLUSION

For the foregoing reasons, Deloitte respectfully requests an Order compelling OIG's production of documents immediately as outlined herein.

## Local Rule 7(m) Certification

Counsel for Deloitte has conferred with counsel for FHFA-OIG concerning the relief sought in a good faith effort to resolve the issues raised in this motion, but has been unable to reach an agreement. After meeting and conferring at length, FHFA-OIG has refused to produce the documents as to which Deloitte now seeks to compel production.

## REQUEST FOR ORAL HEARING

Pursuant to Local Rule 7(f), Deloitte respectfully requests an oral hearing on this motion.

Dated: July 1, 2015
Washington, D.C.

LATHAM & WATKINS LLP

By _____
Christopher S. Turner (D.C. Bar No. 494637)
Stephen P. Barry (D.C. Bar No. 1010311)
555 11th Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: christopher.turner@lw.com
Email: stephen.barry@lw.com

*Attorneys for Defendant Deloitte & Touche LLP*

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2015, I served the foregoing document upon the following,

with electronic delivery to all counsel of record in the Freddie Mac Action:

> Kathryn C. Davis
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Avenue, N.W., Room 6130
> Washington, D.C. 20001
>
> *Attorney for Office of Inspector General, Federal Housing Finance Agency*

By _____

Stephen P. Barry (D.C. Bar No. 1010311)
555 11th Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: stephen.barry@lw.com

*Attorney for Defendant Deloitte & Touche LLP*

22